## In re SOUTHERN MISSOURI TOWING SERVICE, INC., Debtor.

### Bankruptcy No. 82–01843–S–11.

United States Bankruptcy Court, W.D. Missouri, S.D.

Dec. 20, 1983.

Fred Charles Moon, Springfield, Mo., for debtor.

John Reed, Small Business Admin., Springfield, Mo.

## MEMORANDUM OPINION AND ORDER

JOEL PELOFSKY, Bankruptcy Judge.

In this Chapter 11 case an undersecured creditor, the SBA, has made a timely Section 1111(b) election. The debtor disputes the impact of the election. The plan cannot be confirmed until the Court determines whether the claim is treated properly. Except for valuation of the collateral, there are no disputed issues of material fact. The parties have filed briefs and the Court has taken the matter under advisement.

Section 1111(b) of the Code, Title 11, U.S.C., provides, in pertinent part, that:
"(1)(A) A claim secured by a lien on property of the estate shall be allowed or disallowed under § 502 of this title the same as if the holder of such claim had recourse against the debtor on account of such claim, whether or not such holder has such recourse, unless—

(i) the class of which such claim is a part elects ... application of paragraph (2) of this subsection; or

(ii) such holder does not have such recourse and such property is sold under

section 363 of this title or is to be sold under the plan.

(B) A class of claims may not elect application of paragraph (2) of this subsection if—

(i) the interest on account of such claims of the holders of such claims in such property is of inconsequential value; or

(ii) the holder of a claim of such class has recourse against the debtor on account of such claim and such property is sold under section 363 of this title, or is to be sold under the plan.

(2) If such election is made, then notwithstanding section 506(a) of this title, such claim is a secured claim to the extent that such claim is allowed".

The SBA is classified separately in the plan. The value of the collateral is not inconsequential and is not to be sold under the plan. SBA, therefore, is eligible to make the Section 1111(b) election and has done so. *In re Hallum,* 29 B.R. 343 (Bkrtcy. E.D.Tenn.1983). The question which must be resolved is the amount of money to be paid SBA.

Under the provisions of Section 506(a) of the Code a claim may be divided into secured and unsecured parts. As to the secured part, the creditor must be paid the present value. Section 1129(a)(7) of the Code; *In re W.E. Park Lumber Company, Inc.,* 19 B.R. 285 (BC W.D.La.1982). The unsecured part may be paid in the same manner as other unsecured debt. If payment of the part allowed as secured is deferred, those deferred payments must include interest so that the total of the payments equal the present value. There is no such requirement as to the unsecured part.

When the creditor makes the Section 1111(b) election, the whole amount of the debt is allowed as secured. The right to have an unsecured claim is given up. By making this election the creditor prevents the debtor from "cashing him out". *In re Larry Max Griffiths, et al.,* 27 B.R. 873, 10 B.C.D. 173 (Bkrtcy.Kan.1983). But the debtor does not have to pay the whole secured claim in the same manner as if it were fully collateralized. If that were not so, every holder of an undersecured claim would make the election.

The real value of a Section 1111(b) election is where the collateral appreciates and the debtor defaults. The creditor could then recover the value of his claim and not just the part that was collateralized at the time the case was administered. 5 Collier on Bankruptcy ¶ 1129.02[7](c) at 1129–26 (15th Ed.).

The effect of a Section 1111(b) election was discussed during the House debate on the Code.

" . . . if a creditor loaned $15,000,000 to a debtor secured by real property worth $18,000,000 and the value of the real property had dropped to $12,000,000 by the date when the debtor commenced a proceeding under chapter 11, the plan could be confirmed notwithstanding the dissent of the creditor as long as the lien remains on the collateral to secure a $15,-000,000 debt, the face amount of present or extended payments to be made to the creditor under the plan is at least $15,-000,000 and the present value of the present or deferred payment is not less than $12,000,000 . . ." Congressional Record, September 28, 1978, at H11104 reprinted in App 2 Collier on Bankruptcy IX–117 (15th Ed.).

The value of the collateral has not been determined in this case. Debtor schedules it at $190,000. The SBA claim is $226,-993.34. In light of the election, assuming the collateral has a value of $190,000, the debtor must pay to SBA an amount equal to the entire debt but it need pay interest only on the amount of $190,000. Debtor must, therefore, design a plan treatment which pays the $190,000 at present value, which means with interest if payments are deferred, but need not pay SBA more than $226,993.34. It may not be possible to do both. To accomodate debtor's cash flow, it may be necessary to stretch the payments so that principal and interest paid will exceed the amount of the allowed claim. That is not objectionable. Alternatively if debtor would design a plan treatment

where principal and interest payments totalled only the amount of the claim, thus paying nothing on the unsecured part, that would not be objectionable either.

The parties are granted to January 6, 1984, to agree on a value of the collateral or to request a hearing on that issue. In the event of agreement, debtor is granted twenty (20) days thereafter to file an amended plan treating the SBA in accordance with this opinion in light of the agreed value of the collateral. For guidance to the parties, the Court notes that the contract rate of interest, prime and the IRS rate are considered in determining the rate to be paid by a debtor to maintain present value.

SO ORDERED this 20th day of December, 1983.