**In re Robert F. KELLER aka Robert Floyd Keller, Lois E. Keller aka Lois Elaine Keller, Debtors.**

**Bankruptcy No. 84–00046.**

United States Bankruptcy Court, N.D. Iowa.

March 18, 1985.

Dan Childers, Law Offices of R. Fred Dumbaugh, Cedar Rapids, Iowa, for debtors-in-possession.

George Keith, Martin, Miller, Keith & Pederson, Waterloo, Iowa, for Federal Land Bank.

Findings of Fact, Conclusions of Law, and ORDER Denying Federal Land Bank's Motion to Withdraw its § 1111(b) Election; with Memorandum

WILLIAM W. THINNES, Bankruptcy Judge.

On February 22, 1985, a hearing was held on the Motion of Federal Land Bank

to withdraw the section 1111(b) election which it filed herein on the 19th day of November, 1984. Present at said hearing were Dan Childers of the law offices of R. Fred Dumbaugh for the Debtors-in-Possession and George Keith for the Federal Land Bank. After reviewing the election made by the Federal Land Bank, its Motion to Withdraw the § 1111(b) Election, and the arguments of counsel, the Court now makes the following Findings of Fact, Conclusions of Law, Orders and Memorandum.

## FINDINGS OF FACT

1. The Debtors-in-Possession, Robert F. Keller and Lois E. Keller, filed their Petition for Relief under Chapter 11 of the Bankruptcy Code on February 15, 1984.

2. The Debtors-in-Possession are farmers in Van Buren County, Iowa, operating approximately 1931 acres of farm land. The Federal Land Bank of Omaha is the first mortgagee on 1709 acres of said property. As of the date of filing, the debt owed to Federal Land Bank of Omaha was $1,863,450 with the property being valued by the Debtors-in-Possession's appraiser at $903,000. Given these figures, Federal Land Bank had an unsecured claim of $960,450 as of the date of filing. *In re Keller*, 45 B.R. 469, 470 (Bkrptcy.N.D.Iowa 1984).

3. The Debtors herein filed their Plan of Reorganization and Disclosure Statement on September 26, 1984. A hearing on the Disclosure Statement was held herein on the 5th day of November, 1984. Pursuant to the Court's Order from the November 5th hearing, the Debtors amended their Disclosure Statement on November 14, 1984. Thereafter, the creditors were given five days to object to the Amended Disclosure Statement. No creditor objected to the Disclosure Statement as amended. On November 28, 1984, the Court entered an Order approving the Amended Disclosure Statement and fixing the time for filing acceptances or rejections of the plan.

4. On November 19, 1984, the Federal Land Bank of Omaha filed its Section 1111(b) Election.

5. On January 14, 1985, the Federal Land Bank filed its Motion to Withdraw Section 1111(b)(2) Election quoted in pertinent parts below:

1. That after studying the full implications of such election the Federal Land Bank of Omaha believes that said election is not in its best interests.

. 2. That the Land Bank is the sole and only member of Class IX under the Plan of Reorganization of Debtors filed September 26, 1984.

3. That Debtors have not amended either their Plan of Reorganization or their Disclosure Statement to show such election and would therefore not be prejudiced by withdrawal of said election.

4. If said election were not withdrawn Debtors would be required to amend their Plan and Disclosure Statement which would delay consideration of confirmation of Debtors' Plan.

6. The Bankruptcy Docket sheet of Acceptances and Rejections of the Debtors' Plan reveals that the Class IX creditor, the Federal Land Bank, and the Class XII creditor, Bankers Trust Co., are the only creditors rejecting the Plan. Other impaired classes of creditors have voted to accept the Plan.

7. The Debtors' Plan as filed proposes to pay a dividend of five percent to the unsecured creditors in five equal installments. The Debtors' list of creditors filed with their Petition on February 15, 1984, lists the following unsecured creditors:

| Creditor | Amount of Claim |
| --- | --- |
| Floyd R. Keller. | $70,000 |
| Kirt Mercer | 21,000 |
| Shuttleworth & Ingersoll, P.C. | 43,000 |

8. Floyd R. Keller and Shuttleworth and Ingersoll, P.C., filed timely Acceptances of the Plan. Kirt Mercer filed his Acceptance late.

## CONCLUSIONS OF LAW

1. The Movant, Federal Land Bank of Omaha, is not entitled to withdraw its Section 1111(b) election. An election is not revocable as long as the Plan under

which the election was made has not been materially amended by the Debtors-in-Possession. To date Debtors had not made any material changes in their Plan.

■ 2. Due to the lateness of the Federal Land Bank's request and its failure to timely object to the Disclosure Statement on those grounds, the Debtors are not required to amend their Disclosure Statement and Plan to reflect the effect upon the unsecured creditors of the decision by Federal Land Bank of Omaha to utilize its Section 1111(b)(2) rights of election.

## ORDERS

IT IS HEREBY ORDERED that the Federal Land Bank of Omaha shall not be allowed to withdraw its Section 1111(b)(2) Election.

IT IS FURTHER ORDERED that the Debtors-in-Possession are not required to amend their Disclosure Statement so as to set forth the effect upon other unsecured creditors of the Federal Land Bank's election pursuant to 11 U.S.C. § 1111(b)(2).

## MEMORANDUM

### *Effect of § 1111(b) Election*

■ In general, the effect of making an election pursuant to 11 U.S.C. § 1111(b) is to allow an undersecured creditor to have its claim treated as fully secured with the undersecured creditor retaining a lien on its collateral to the full extent of its pre-petition debt. 11 U.S.C. § 1111(b)(2). Congress clearly set forth the effect of a § 1111(b) election in its Legislative Statements to 11 U.S.C. § 1129(b)[1] quoted in relevant part below:

If section 1111(b)(2) applies then the "electing" class is entitled to have the entire allowed amount of the debt related to such property secured by a lien even if

the value of the collateral is less than the amount of the debt. In addition, the plan must provide for the holder to receive, on account of the allowed secured claims, payments, either present or deferred, of a principal face amount equal to the amount of the debt and of a present value equal to the value of the collateral. For example, if a creditor loaned $15,-000,000 to a debtor secured by real property worth $18,000,000 and the value of the real property had dropped to $12,-000,000 by the date when the debtor commenced a proceeding under chapter 11, the plan could be confirmed notwithstanding the dissent of the creditor as long as the lien remains on the collateral to secure a $15,000,000 debt, the face amount of present or extended payments to be made to the creditor under the plan is at least $15,000,000, and the present value of the present or deferred payments is not less than $12,000,000. Congressional Record, September 28, 1978, at H 11104, reprinted in App. 3, Collier on Bankruptcy IX–117 (15th Ed.).

Congress also set forth the advantages and disadvantages of making the § 1111(b) election. One of the disadvantages is that the electing class of creditors, in essence, cannot vote against the plan. This provision is illustrated in the following quotes from the Legislative Statements:

One last point deserves explanation with respect to the admittedly complex subject of confirmation. Section 1129(a)(7)(C) in effect exempts secured creditors making an election under section 1111(b)(2) from application of the best interest of creditors test. In the absence of an election the amount such creditors receive in a plan of liquidation would be the value of their collateral plus any amount recovered on the deficiency in the case of a recourse loan.

**1.** The Court also notes that the effect of an § 1111(b) election has been set forth in various articles and in several cases all published and circulated prior to November 19, 1984, the date Federal Land Bank filed its § 1111(b) election. *See, e.g.,* Section 1111(b) of the Bankruptcy Code: How Much Does the Debtor Have to Pay and When Should the Creditor Elect?, 58 *Am. Bankr.L.J.* 129 (1984); Section 1111(b): Providing Undersecured Creditors with Postpetition Appreciation, 56 *Am.Bankr.L.J.* 195 (1982). *See also, In re Southern Missouri Towing Service, Inc.,* 35 B.R. 313 (Bkrtcy.W.D.Mo.1983); *In re Griffiths,* 27 B.R. 873 (Bkrtcy.Kan.1983).

However, under section 1111(b)(2), the creditors are given an allowed secured claim to the full extent the claim is allowed and have no unsecured deficiency. Since section 1129(b)(2)(A) makes clear that an electing class need receive payments of a present value only equal to the value of the collateral, it is conceivable that under such a "cram down" the electing creditors would receive nothing with respect to their deficiency. The advantage to the electing creditors is that they have a lien securing the full amount of the allowed claim so that if the value of the collateral increases after the case is closed, the deferred payments will be secured claims. Thus it is both reasonable and necessary to exempt such electing class from application of section 1129(a)(7) as a logical consequence of permitting election under section 1111(b)(2). Congressional Record, September 28, 1978, at H 11105, reprinted in App. 3, Collier on Bankruptcy, IX–118–119 (15th Ed.).

■ The practical effect of Federal Land Bank's § 1111(b) election was to remove it from the class of unsecured claims which it clearly would have dominated by virtue of the size of its unsecured claim. The total of the other unsecured claims is $134,000. Federal Land Bank's unsecured claim before the § 1111(b) election was $960,450. Section 1126(c) provides that a class of interests has accepted a plan if such plan has been accepted by holders that hold at least two-thirds in amount and more than one-half in number of the allowed claims. Given the size of Federal Land Bank's unsecured claim, Federal Land Bank's vote would have controlled the vote of the entire unsecured class.

A rejection of the plan by the unsecured creditors would have allowed Federal Land Bank to raise objections to the Debtors' plan not only on feasibility but also on the basis of the absolute priority as set forth in 11 U.S.C. § 1129(b)(2)(B)(ii).[2] This Court refuses to allow Federal Land Bank to correct its "mistake" and withdraw its election now that Federal Land Bank appears to be cognizant of the ramifications of its decision.[3]

*"Unelection" of § 1111(b) Treatment*

■ Federal Rule of Bankruptcy Procedure 3014 provides the timetable for making a § 1111(b) election. In pertinent part, Rule 3014 provides:

An election of application of § 1111(b)(2) of the Code by a class of secured creditors in a chapter 9 or 11 case may be made at any time prior to the conclusion of the hearing on the disclosure statement or within such later time as the court may fix.... The election, if made ... shall be binding on all members of the class with respect to the plan.

The Advisory Committee Note with respect to Rule 3014 provides in pertinent part:

Once the hearing has been concluded, it would be too late for a secured creditor class to demand different treatment unless the court has fixed a later time.

\* \* \* \* \* \*

The secured creditor class must know the prospects of its treatment under the plan before it can intelligently determine its rights under § 1111(b). The rule recognizes that there may be negotiations be-

---

**2.** *See also,* Section 1111(b) of the Bankruptcy Code: How Much Does the Debtor Have to Pay and When Should the Creditor Elect? 58 *Am. Bankr.L.J.* 129, 143 (1984) wherein it is stated:

The electing creditor's waiver of its unsecured vote can be a significant sacrifice. For example, a plan cannot be crammed down on a dissenting unsecured class where stockholders who are a class junior to unsecured creditors receive or retain property, such as stock, unless the dissenting unsecured class receives the present value of the allowed amount of its claims. Rejection of the plan could force the

stockholders to eliminate their stock ownership interests, or pay a greater percentage of the unsecured claims. By not electing a partially secured creditor may force class rejection, and coerce a debtor to pay a greater percentage of unsecured claims, increasing the present value of nonelection payments possibly to the point that such creditor will receive greater value by not electing.

**3.** *See* paragraph 1 of Federal Land Bank's Motion to Withdraw § 1111(b)(2) Election quoted in Finding of Fact 5, supra.

tween the proponent of the plan and the secured creditor leading to a representation of desired treatment under § 1111(b). If that treatment is approved by the requisite majorities of the class and culminates in a written signed statement filed with the court, that statement becomes binding and *the class may not thereafter demand different treatment under § 1111(b) with respect to that plan.... Only if that plan is not confirmed may the class of secured creditors thereafter change its prior election.* (Emphasis supplied). Reprinted in 1 App. Collier on Bankruptcy 1314–1315 (15th Ed.).

Once a class of secured creditors has elected treatment under § 1111(b) it cannot thereafter "unelect" with respect to the particular plan proposed at the time the election was made. To allow a creditor to withdraw its election would allow it to materially alter the Debtors' prospects of confirmation as it would dramatically alter the Debtors' negotiating position with its other creditors. Once the election has been made the Debtors and other creditors should be allowed to rely upon the election so long as the plan is not materially altered by the Debtor. A material alteration of the Plan by the Debtor is tantamount to filing a different plan and if a material alteration is made it would be inequitable to not allow a creditor to fully evaluate the proposal and determine whether it wished to elect treatment under § 1111(b). The definition of a material alteration is not capable of precise definition and may be likened to Justice Potter Stewart's comments regarding obscenity, "I know it when I see it ..." *Jacobellis v. State of Ohio*, 378 U.S. 184, 197, 84 S.Ct. 1676, 1683, 12 L.Ed.2d 793, 804 (1964). Beyond such an ambiguous definition this Court shall not venture.

*Amendment of Disclosure Statement*

Federal Land Bank seeks to have this Court require the Debtors to amend their Disclosure Statement to reflect the effect of its § 1111(b) election on other unsecured creditors.[4] It may well have been entirely appropriate for a creditor to object to the disclosure statement with respect to the effect of Federal Land Bank's § 1111(b) election on other unsecured creditors prior to approval of the disclosure statement. Such information does appear to be necessary for the other creditors to make informed decisions when voting on the Plan.

In this case, however, it is not appropriate to require the Debtors to amend their Disclosure Statement due to the tardiness of Federal Land Bank's objection. The hearing on the Disclosure Statement was held on November 5, 1984. The Debtors were given until November 25, 1984 to amend the Disclosure Statement as requested by the creditors with the creditors being given five days after Debtors' filing of their Amended Disclosure Statement to object to the Disclosure Statement as Amended. Federal Land Bank made its § 1111(b) election on November 19, 1984 and did not object to the lack of information in the Disclosure Statement regarding the effect of its § 1111(b) election on other creditors until January 14, 1985 when it made its Motion to Withdraw its § 1111(b) election. The Disclosure Statement as amended was approved on November 28, 1984 and ballots were distributed. The deadline for voting on the Plan was set for December 26, 1984. By that deadline Floyd R. Keller and Shuttleworth & Ingersoll, P.C., two of the Debtors' unsecured creditors, had voted to accept the Plan. The remaining unsecured creditor, Kirt Mercer, voted to accept the Plan on December 27, 1984. To require the Debtors to amend their Disclosure Statement at this time and allow the unsecured creditors to revote is tantamount to allowing Federal Land Bank to request that the Debtors have the Plan accepted by the unsecured creditors twice. Such a result was never intended by the drafters of the Code. In

---

**4.** As an unsecured creditor with its claim being $960,450 Federal Land Bank would have been entitled to five equal payments of $9,604.50 under the plan. At a minimum as a result of Federal Land Bank's election through which it forgoes these sums the Debtors have an additional $9,604.50 in each of the first five years with which to fund their plan.

short, Federal Land Bank had ample opportunity to make a timely objection to the lack of this information in the Disclosure Statement and this Court will not *ipso facto* allow Federal Land Bank to raise this objection to the Debtors' Disclosure Statement.