**In re CENTURY GLOVE, INC. Southwest Gloves and Safety Equipment, Inc.**

**Bankruptcy Nos. 85–438, 85–439.**

United States Bankruptcy Court, D. Delaware.

June 4, 1987.

---

See also, Bkrtcy., 73 B.R. 528.

Eduard F. von Wettberg, III, Wilmington, Del., for debtor.

Peter J. Walsh, Wilmington, for FAB.

HELEN S. BALICK, Bankruptcy Judge.

The debtors, Century Glove and Southwest Gloves and Safety Equipment, have asked the court for rulings in advance of a confirmation hearing as to whether actions they propose to take with regard to the claim of First American Bank are legally appropriate in the context of debtors' present proposed plans.

Section 3.5 of Century's First Amended Plan of Reorganization which concerns the secured claim of FAB provides:

> [FAB] shall retain the liens securing such Claim (in property of the Debtor and Southwest). The Debtor shall pay [FAB] deferred cash payments, of a value, as of the Effective Date of the Plan, equal to the value of [FAB's] interest in the Debtor's and Southwest's interests in such property, over a period of fifteen (15) years, said payments to be made monthly on the same date of each month as the Effective Date. The Debtor shall have the right to prepay such Claim for its then present value at any time in whole or in part, and partial prepayments shall be applied to the monthly payments next becoming due. The Debtor shall also have the right at any time to surrender to the holder any or all of the property securing such Claim, which property shall be valued by the Court at the time of such surrender and shall be applied to the monthly payments next becoming due. Until such time as the FAB Lawsuit is determined by entry of a final and nonappealable order, all payments to be made to [FAB] shall be held by the Debtor in a separate interest bearing account; and such payments and any interest thereon shall be paid over to FAB or distributed in accordance with the Plan as may be appropriate when the FAB Lawsuit is finally determined.

Section 3.9 of Century's plan which concerns the unsecured claim of FAB provides that FAB is entitled to share in any lawsuit proceeds received as proposed in section 3.8 of the plan and that FAB's claim shall be reduced by any payments received under Southwest's plan. Section 3.9 also provides

that upon payments of FAB's claim in full, if [FAB] has received any payments or other property from Southwest, Southwest shall be subrogated pursuant to section 509(b)(2) of the Code.

Section 3.4 of Southwest's proposed plan which concerns the secured claim of FAB provides:

[FAB] shall retain the liens securing such Claim (in property of the Debtor and Century). Under the Century plan, Century shall pay [FAB] deferred cash payments, of a value, as of the Century Plan Effective Date, equal to the value of [FAB's] interest in the Debtor's and Century's interests in such property, over a period of fifteen (15) years, said payments to be made monthly on the same date of each month as the Century Plan Effective Date. The Debtor shall have the right at any time to surrender to [FAB] any or all of the property securing such Claim, which property shall be valued by the Court at the time of such surrender and shall be applied to the monthly payments to [FAB] next becoming due under the Century Plan. Under the Century Plan, until such time as the Century FAB Lawsuit is determined by entry of a final and non-appealable order, all payments to be made to [FAB] by Century are to be held by Century in a separate interest bearing account; and such payments and any interest thereon are to be paid over to FAB or distributed in accordance with the Century Plan as may be appropriate when the Century FAB Lawsuit is finally determined.

Section 3.7 of Southwest's plan which concerns the unsecured claim of FAB provides that FAB is entitled to share in any lawsuit proceeds received as proposed in section 3.6 of the plan and that FAB's allowed unsecured claim shall be reduced by any payments received under the Century plan.

FAB has undersecured claims against both Century and Southwest (claim # 70, claim # 46). Subsequent to the filing of the debtors' plans, FAB elected under § 1111(b) of the Bankruptcy Code and Bankruptcy Rule 3014 to have its claims against Century and Southwest treated as secured for the full amount of the debt (Doc. # 81, Doc. # 163).

█ The first of the debtors' proposed actions, which are presented in the alternative, is that Southwest, as guarantor of the loan indebtedness of Century to FAB, would surrender to FAB all collateral of Southwest which secured the guaranty. The debtors contend that since FAB has elected to have its entire claim against Southwest treated as secured, such surrendering will constitute an "indubitable equivalent" cram down under § 1129(b)(2)(A)(iii) and FAB's claim against Southwest for payment of the loan indebtedness will be fully satisfied. Debtors further contend that because the claims of FAB against Century and Southwest represent a claim for one indebtedness, Southwest's satisfaction of the indebtedness will cause it to become subrogated to FAB's rights, and the claim of FAB against Century will be extinguished.

Section 1129(b)(1) of the Bankruptcy Code provides that if all of the applicable requirements of § 1129(a) other than paragraph (8) (which requires each class of claims or interests to accept the plan or not be impaired under the plan) are met with respect to a plan, the court, on request of the proponent of the plan, will confirm the plan if it does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted the plan. That is, the plan may be "crammed down" on a creditor despite that creditor's nonacceptance of the plan.

Section 1129(b)(2)(A) sets out the requirements that must be provided for in a plan in order for the plan to be fair and equitable with respect to a class of secured claims. The plan must, at a minimum, satisfy one of three of the following requirements:

(i)(I) that the holders of such claims retain the liens securing such claims, whether the property subject to such liens is retained by the debtor or transferred to another entity, to the extent of the allowed amount of such claims; and

(II) that each holder of a claim of such class receive on account of such claim deferred cash payments totaling at least the allowed amount of such claim, of a value, as of the effective date of the plan, of at least the value of such holder's interest in the estate's interest in such property;

(ii) for the sale, subject to section 363(k) of this title, of any property that is subject to the liens securing such claims, free and clear of such liens, with such liens to attach to the proceeds of such sale, and the treatment of such liens on proceeds under clause (i) or (iii) of this subparagraph; or

(iii) for the realization by such holders of the indubitable equivalent of such claims.

None of these requirements are satisfied under the present proposed Century plan.

But for FAB's election and subject to valuation, section 3.5 of the Century plan would have satisfied the requirements of § 1129(b)(2)(A)(i)(I) and (II). That provision permits FAB to retain its lien securing its claim and to receive deferred cash payments over 15 years of a value, as of the effective date of the plan, equal to the value of FAB's interest in Century's and Southwest's collateral. Because of FAB's election, the plan must provide for deferred cash payments totaling at least the allowed amount of FAB's claim and having a present value no less than the value of its collateral. The proposed Century plan therefore does not satisfy the first subparagraph of § 1129(b)(2)(A).

The second subparagraph of § 1129(b)(2)(A) is irrelevant to this determination.

The third subparagraph is also not satisfied under Century's proposed plan. Although, as debtor's counsel points out in its memorandum, Collier does state that according to legislative history abandonment of the collateral would certainly satisfy the test of the "indubitable equivalent" of a secured claim (*see* 5 *Collier on Bankruptcy* ¶ 1129.03[4][c], at 1129–55 (15th ed. 1987)), debtors cannot now use the provisions of section 3.5 of the Century plan out of context to satisfy § 1129(b)(2)(A)(iii) when the plan obviously contemplated treatment of FAB as a secured and unsecured creditor. Nothing in the plan provides that surrender of all Southwest collateral will satisfy FAB's claim against Century. The language of the plan which states "[t]he Debtor shall also have the right at any time to surrender to the holder any or all of the property securing such claim, which property shall be valued by the court at the time of such surrender and shall be applied to the monthly payments next becoming due" does not constitute a requirement that debtors surrender the collateral or provide that such surrender would satisfy the obligation of both Century and Southwest.

In addition, Collier clearly states that "treatment which is less favorable than the treatment specified in § 1129(b)(2)(A)(i) and (ii) would not satisfy the [indubitable equivalent] test." 5 *Collier on Bankruptcy* ¶ 1129.03[4][c], at 1129–56 (15th ed. 1987).

The proposed Southwest plan also does not satisfy any of the three requirements of § 1129(b)(2)(A) for the reasons stated above with regard to the Century plan. Southwest's proposal cannot now be interpreted to permit debtors' surrender of Southwest collateral to constitute the "indubitable equivalent" of FAB's secured claim and extinguish debtors' obligations.

Furthermore, because debtors propose to treat FAB in a manner different than expressly provided for in the plan, debtors must comply with the provisions of the Code relating to modification, § 1127. Assuming that it is debtors' intention to impair FAB's claim, then § 1123(a)(3) requires that the plan specify that treatment.

In addition, upon debtors' modification or alteration of the plans, FAB must be given an opportunity to change its prior election. As stated in the advisory committee note to Bankruptcy Rule 3014, a secured creditor class must know the prospects of its treatment under the plan before it can intelligently determine its rights under § 1111(b). *See* Bankruptcy Rule 3014 advisory committee note, *reprinted in* 5 *Collier on Bankruptcy* ¶ 1111.02, at 1111–32 (15th ed. 1987). *See also In re*

*Keller,* 47 B.R. 725, 728–30 (Bankr.N.D. Iowa 1985).

Even if debtors' plans did expressly provide for the surrender of all Southwest collateral and the surrender did constitute the "indubitable equivalent" of FAB's secured claim, debtors misstate the law regarding guarantees. A contract of guaranty creates a secondary liability. It is a "collateral undertaking by one person to answer for the payment of a debt or the performance of some contract or duty in case of default of another person who is liable for such payment or performance in the first instance." *Walton v. Piqua State Bank,* 204 Kan. 741, 466 P.2d 316 (1970). *See generally* 38 Am.Jur.2d *Guaranty* §§ 2, 3 (1968).

■ While debtors are correct in their statement that a surety's right of subrogation ordinarily arises when the debt is paid in full (*see* 10 *Williston on Contracts* § 1269 (1967)), the statement is used by debtors out of context. The guarantor is liable only after the failure of the principal party to perform its contractual duty. 38 Am.Jur.2d *Guaranty* § 127 (1968).

Southwest is the guarantor of Century's debt to FAB. Century cannot circumvent its obligations to FAB by causing the guarantor to satisfy its indebtedness to FAB before Century defaults and FAB enforces the contract of guaranty. While FAB cannot expect to have its debt paid twice, it can expect to have Century satisfy its contractual obligation and expect to look to Southwest for satisfaction only if Century should default. It is possible Southwest could extinguish its obligation as guarantor by surrendering all its property serving as collateral and step into FAB's shoes as a creditor of Century to the extent Century benefits from a redution in the amount of FAB's claim against it. But, Century cannot expect to have its entire indebtedness to FAB extinguished by a premature satisfaction by Southwest of its guaranty obligation.

The second of the debtors' proposed actions is that Century and Southwest each would surrender to FAB all collateral in which FAB claims an interest except that each debtor would retain collateral with a total aggregate value of less than 10% of FAB's claim against each debtor. The debtors propose that such retained collateral would be of "inconsequential value" within the meaning of § 1111(b)(1)(B)(i) and, as a consequence, FAB's elections of § 1111(b)(2) treatment for its claims against the debtors should be set aside as inappropriate and FAB should be treated as the debtors' plan originally contemplated. FAB would be treated as a secured creditor to the extent of the value of its interest in the collateral retained by each debtor, and the balance of FAB's claim, reduced by the value of the surrendered collateral, would be an unsecured claim in the class created under each plan for FAB's unsecured claim.

■ Debtors do not present any support from the Bankruptcy Code, legislative history, or case decisions to suggest that a debtor can create an inconsequential value situation under § 1111(b)(1)(B)(i) after a creditor has already elected to have its claim treated as fully secured. The purpose of § 1111(b)(2) is to give the creditor power to decide how it will be treated and prevent a "cash out" situation. *In re Griffiths,* 27 B.R. 873 (Bank.D.Kan.1983).

FAB elected to be treated as a secured creditor for the full amount of its claims based upon the treatment proposed by debtors for FAB in their original plans. The debtors cannot now circumvent the effect of that election and change their proposed treatment of FAB without formally modifying their plans to specify the intended treatment of FAB. Upon modification, FAB must be given the opportunity to reconsider its prior election.