In the Matter of IPC ATLANTA LIMITED PARTNERSHIP, an Ohio Limited Partnership d/b/a Noble Oaks Apartments, Debtor.

IPC ATLANTA LIMITED PARTNERSHIP, an Ohio Limited Partnership d/b/a Noble Oaks Apartments, Movant,

v.

FEDERAL HOME LOAN MORTGAGE CORPORATION, Respondent.

Bankruptcy No. A91–63869–WHD.

United States Bankruptcy Court,
N.D. Georgia,
Atlanta Division.

Feb. 3, 1994.

Nicholas N. Sears, Frank W. DeBorde, Morris, Manning & Martin, Atlanta, GA, for debtor.

Neil C. Gordon, Macey, Wilensky, Cohen, Wittner & Kessler, Atlanta, GA, for Federal Home Loan Mortg. Corp.

## ORDER

W. HOMER DRAKE, Jr., Bankruptcy Judge.

This matter comes before the Court on the Motion to Require Lender to Accept Plan Note, filed December 29, 1993, by IPC Atlanta Limited Partnership (hereinafter "Debtor"). The lender in this dispute is the Federal Home Loan Mortgage Corporation (hereinafter "Freddie Mac"), which opposes the Debtor's Motion. The matters involved herein constitute a core proceeding over which this Court has jurisdiction. 28 U.S.C. § 157(b). Based upon the reasons set forth in the discussion below, the Court will deny the Debtor's Motion.

### Findings of Fact

The Debtor in this case is an Ohio limited partnership whose sole asset is an apartment complex located in Clayton County, Georgia. When the Debtor purchased the apartments in 1988, it assumed a first priority secured loan of $1,725,000.00 held by Freddie Mac and secured by the property. At the time the Debtor filed its chapter 11 petition on February 28, 1991, the unpaid principal balance was $1,699,308.00, plus interest in the amount of $82,086.00. Therefore, Freddie Mac had a total claim of $1,782,114.00.

During the course of the Debtor's bankruptcy case, the value of the property securing Freddie Mac's claim was determined to be $1,350,000.00.[1] As a result, Freddie Mac found itself to be an undersecured creditor, with a deficiency claim of $432,114.00. Before confirmation of the Debtor's plan, however, Freddie Mac elected to treat its entire claim as secured, pursuant to § 1111(b)(2) of the Bankruptcy Code.[2] The plan proposed by the Debtor provided for the treatment of Freddie Mac's secured claim as follows:

[Freddie Mac] will be provided with a Note ... the principal amount of which will be [$1,350,000.00]. . . .

... [If Freddie Mac] elects application of 11 U.S.C. § 1111(b)(2) with respect to its claim, the reorganized Debtor shall pay interest on the [Plan Note] at a "market rate" as determined by the Court at the confirmation hearing. The entire amount of [Freddie Mac's] claim shall be secured by the Property and the total to be paid on the [Plan Note], including principal and interest, will equal the allowed secured claim of [Freddie Mac].

· · · · ·

... All other terms of the Loan Documents not contradicted herein shall remain in full force and effect and are not changed by the Plan.

*See* Plan at ¶ 7.1.6 (June 28, 1991).[3]

In July of 1992, this Court confirmed the Debtor's chapter 11 plan (hereinafter "Plan") over the strong objections of Freddie Mac. On appeal, the United States District Court for the Northern District of Georgia affirmed the confirmation order, and Freddie Mac declined to appeal further. On November 24, 1993, the effective date of the Plan,[4] the Debtor sent Freddie Mac a note pursuant to paragraph 7.1.6 of the plan (hereinafter "Plan Note"). In accordance with the language of the Plan, the Plan Note is in the principal amount of $1,350,000.00, and it bears interest at a market rate of 10.03%. In addition, the Plan Note extends the maturity date of the original note for three years, until October 1, 2000. Interest only payments will be made for the first two years of the term, after which the loan is to be completely reamortized on a 30–year amortization schedule. Freddie Mac refused to ac-

---

1. This valuation was determined pursuant to § 506(a) of the Bankruptcy Code.

2. This section of the Code provides as follows: If such an election is made, then notwithstanding section 506(a) of this title, such claim is a secured claim to the extent that such claim is allowed.
   11 U.S.C. § 1111(b)(2).

3. The Plan as originally proposed by the Debtor erroneously stated the principal amount of the Note to be $1,300,000.00. The Debtor corrected

this error by modification of the Plan dated December 4, 1991.

4. The effective date of the Debtor's plan was determined to be thirty (30) days following the date on which appeals of the confirmation order had been dismissed or otherwise finally determined. The District Court affirmed the confirmation order on September 24, 1993, making the effective date of the plan November 24, 1993, thirty days later.

cept the Plan Note, however, claiming it does not conform to the requirements of § 1111(b)(2).

The part of the Plan Note which is at issue in the Debtor's Motion pertains to the treatment of Freddie Mac's deficiency claim in the event the Plan Note is prepaid. Specifically, the second page of the Plan Note provides, in part, as follows:

> This Note may be prepaid in whole at any time provided that the above-named Borrower gives the holder hereof written notice of Borrower's intention to prepay at least thirty (30) days prior to such prepayment and provided further that the above-named Borrower pays to the holder hereof together with such prepayment a prepayment premium equal to the remainder *obtained by subtracting from the sum of $432,114 the total of all interest payments theretofore made* by the above-named Borrower under this Note, including without limitation all of the aforementioned prepaid interest, until such time as said remainder is no longer a positive number at which time and thereafter this Note may be prepaid in full or in part with no charge or premium.

*See* Debtor's Motion, Exhibit A (Dec. 29, 1993) (emphasis added). Freddie Mac takes the position that it holds a continuing lien for the full amount of its $432,114.00 deficiency claim until the date of the Plan Note's maturity. In other words, should the Debtor try to satisfy the Plan Note prior to its maturity, it may not reduce the prepayment premium by the interest payments Freddie Mac has received.

Freddie Mac's opposition to the Debtor's Motion raises other questions, too. Specifically, Freddie Mac alleges that the face amount of the Plan Note, currently listed as $1,350,000.00, should be $1,782,114.00 to re-

flect its full allowed claim. In addition, the Plan Note allegedly attempts to change other aspects of the Debtor's prebankruptcy obligations to Freddie Mac which were not modified by the Plan itself. For these reasons, Freddie Mac has refused to accept the Plan Note, forcing the Debtor to bring this Motion.

## Conclusions of Law

### A. Effect of Interest Payments

■ The major issue of contention is the language of the Plan Note which would allow prior interest payments on the $1,350,000.00 principal to reduce Freddie Mac's overall claim of $1,782,114.00 if the Debtor prepays the Note prior to its maturity. At the outset, the Court notes that it approved the Debtor's treatment of Freddie Mac's claim when it entered an order confirming the Plan. As previously noted, the Plan provides that the Debtor would deliver to Freddie Mac the Plan Note in the principal amount of $1,350,000.00, plus interest at the market rate. The Court approved this treatment of Freddie Mac's claim because it met the requirements of 11 U.S.C. § 1129(b)(2)(A)(i)(II).[5] Specifically, the Court stated as follows:

> As stated, Freddie Mac's claim is to be treated as fully secured pursuant to its § 1111(b) election. The amount of such secured claim is $1,782,114, and the stipulated value of the property is $1,350,000. Therefore, Freddie Mac must receive payments which total $1,782,114 over the life of the plan and with a present value of $1,350,000. Debtor's plan provides ... that Freddie Mac will receive a note in the principal amount of $1,350,000, with interest to be paid at the market rate, as determined by the Court. There can be no question that Freddie Mac is receiving the present value of the collateral, or $1,350,000. Moreover, the total of the payments

---

**5.** This provisions provides as follows:
   For the purpose of this subsection, the condition that a plan be fair and equitable with respect to a class includes the following requirements:
   (A) With respect to a class of secured claims, the plan provides—

   .    .    .    .    .

   (i)(II) that each holder of a claim of such class receive on account of such claim deferred

cash payments totaling at least the allowed amount of such claim, of a value, as of the effective date of the plan, of at least the value of such holder's interest in the estate's interest in such property ...
11 U.S.C. § 1129(b)(2)(A)(i)(II).

to Freddie Mac over the life of the plan more than equal Freddie Mac's total claim.... Thus, the Court finds that § 1129(b)(2)(A)(i)(II) has been satisfied, and Freddie Mac's objection as to that subsection is denied.

*In re IPC Atlanta Ltd. Partnership,* 142 B.R. 547, 555 (Bankr.N.D.Ga.1992) (Drake, B.J.) (citation omitted).

Freddie Mac does not argue now, nor could it, that the requirements of § 1129(b)(2)(A)(i)(II) have not been satisfied. The requirements of the cram down provision referred to above are satisfied because the interest payments constitute the payments necessary to maintain the property's present value of $1,350,000.00. Freddie Mac does claim, however, that its treatment under the Plan Note does not comply with § 1111(b)(2). The Court notes that for the Plan Note to be acceptable, the interest payments would have to serve a dual purpose. Not only would they maintain the present value of the $1,350,000.00, but they also would count towards satisfying Freddie Mac's total claim of $1,782,114.00.

It is this dual role of the interest payments which forms the basis of Freddie Mac's objection to the Plan Note. Indeed, there exists some case and scholarly authority supporting Freddie Mac's position. Specifically, Freddie Mac relies heavily upon the case of *680 Fifth Ave. Assocs. v. Mutual Benefit Life Ins. Co. (In re 680 Fifth Ave. Assocs.),* 156 B.R. 726 (Bankr.S.D.N.Y.1993), which provides in pertinent part as follows:

> [T]he debtor must pay the secured creditor ... the value of its true secured claim over time with interest so that the stream of payments has a present value equal to the true value of the secured claim at confirmation, *plus* an amount equal to the unsecured portion of the debt as valued at confirmation without regard to the present value.

*Id.* at 733 (emphasis added). Under this analysis, the Plan Note would be deficient. The interest payments create a stream of payments that has a present value of $1,350,000.00. The view espoused by *680 Fifth Ave.,* however, would require the Plan Note to provide for an additional $432,114.00, the unsecured portion of Freddie Mac's claim. The interest payments that keep the value current pursuant to § 1129(b)(2) are not sufficient to reduce Freddie Mac's § 1111(b)(2) claim. *See also In re 222 Liberty Assocs.,* 108 B.R. 971, 993–94 (Bankr.E.D.Pa.1990) (declining to confirm plan because of failure to satisfy § 1111(b)); *In re Dyer,* 142 B.R. 364, 372 n. 15 (Bankr.D.Ariz.1992) (noting that debtor arguably could demand interest on full amount of claim, irrespective of value of collateral); Dale C. Schian, *Section 1111(b)(2): Preserving the In Rem Claim,* 67 AM.BANKR.L.J. 479 (1993) (proposing that creditor's prepetition claim be allowed to continue to accrue interest in accordance with terms of original obligation); Jeffrey A. Stein, *Section 1111(b): Providing Undersecured Creditors with Postconfirmation Appreciation in the Value of the Collateral,* 56 AM.BANKR.L.J. 195 (1982) (noting that "total amount of payments to an electing creditor becomes greater than that required to be given the creditor under section 1129(b)(2)(A)(i)(II)").

Of course, the Debtor takes the opposing position. In supporting the legality of the proffered Plan Note, the Debtor argues that the interest payments, which serve to maintain the current value of the $1,350,000.00, also serve to reduce Freddie Mac's overall § 1111(b)(2) claim. Case and scholarly authority exist to support this position as well. Recently, one court has stated as follows:

> Under § 1129(b)(2)(A)(i)(II), "fair and equitable" treatment must include the receipt of "deferred cash payments totaling at least the allowed amount of such claim." Because of the § 1111(b) election, the "allowed amount" is the full prepetition claim regardless of the value of the collateral. These "deferred cash payments" also must be "of a value, as of the effective date of the plan, of at least the value of such holder's interest in the estate's interest in such property." *So, the same payments under the plan must satisfy two requirements: (1) the simple, arithmetic total of the stream of payments must at least equal the total claim, and (2) those payments must have a present value equal to the value of the collateral.*

*In re Bloomingdale Partners,* 155 B.R. 961, 974 (Bankr.N.D.Ill.1993) (emphasis added) (citation omitted). Under this approach, the Debtor is allowed to use the interest payments to satisfy the requirements of both §§ 1129(b)(2)(A)(i)(II) and 1111(b)(2). *See also In re Southern Missouri Towing Serv., Inc.,* 35 B.R. 313 (Bankr.W.D.Mo.1983) (suggesting debtor propose plan "where principal *and* interest payments totalled only the amount of the claim" (emphasis added)); 3 DAVID G. EPSTEIN, ET AL., BANKRUPTCY § 10–27, at 52–53 (1992) (concluding that interest payments serve "double duty") (hereinafter "EPSTEIN"); DOUGLAS G. BAIRD, THE ELEMENTS OF BANKRUPTCY at 246 (1992) (electing creditor receives stream of payments in face value of its claim, but equal to present value of collateral); James A. Pusateri, et al., *Section 1111(b) of the Bankruptcy Code: How Much Does the Debtor Have to Pay and When Should the Creditor Elect?,* 58 AM. BANKR.L.J. 129, 136–41 (1984) (present value payments, including interest, may satisfy § 1111(b)(2) claim); Kenneth N. Klee, *All You Ever Wanted to Know About Cram Down Under the New Bankruptcy Code,* 53 AM.BANKR.L.J. 133, 158 (1979) (same).

While the various authorities cited by the parties make very persuasive arguments, they are of little help at this stage of the Debtor's case. The Debtor's Plan has been confirmed, and its terms control the rights and duties of the parties. 11 U.S.C. § 1141(a). In view of this fact, the Court concludes that Freddie Mac's argument is inconsistent with the language of the Plan. In reaching this decision, the Court finds EPSTEIN to be particularly enlightening. In referring to a hypothetical situation where the electing creditor's claim was $10,000,000, but the property had a current value of $7,500,000, EPSTEIN states as follows:

> The implication from section 1129 is that the interest payments really do double

duty and that those payments have not only satisfied the present value requirement, but also should be used to reduce the principal amount of the mortgage. We think that is unfair and is in conflict with the policy of section 1111(b)(2), but we see no clear way to escape that outcome. If that were not true, *the plan that we have proposed could not have been approved because at the end of the plan there would still be an outstanding balance of $2,500,-000 (if none of the interest was treated as reducing the principal balance).* Thus it would be inconsistent to say the plan we have suggested with total payments of more than $10,000,000 and a present value of $7,500,000 could be approved and yet that the interest payments would not go to reduce the principal balance of $10,000,000.

EPSTEIN at 53 (emphasis added).

The reasoning of EPSTEIN is important because it reveals the fallacy of Freddie Mac's argument in view of the confirmed Plan. It is inconsistent to say that the Plan, with its total payments of more than $1,782,114.00 and a present value of $1,350,000.00, could have been approved if the interest payments would not go to reduce the balance of Freddie Mac's allowed claim upon the maturity of the Plan Note. Moreover, it is inconsistent to say that the Plan Note may not provide that the interest payments would reduce Freddie Mac's claim should the Debtor prepay the Note prior to its maturity. Even though this issue was not raised prior to confirmation, the Court implicitly rejected Freddie Mac's argument by confirming the Plan. As such, Freddie Mac may not make such an argument at this late date.[6] Therefore, the Court concludes that the provision of the Plan Note in question complies with the terms of the Plan, since the interest payments necessary to maintain the present value of the property may reduce Freddie Mac's claim.[7]

---

**6.** The Court emphasizes that it reaches this decision based upon the language of the confirmed Plan. That is not to say the outcome would have been the same had Freddie Mac raised this issue prior to confirmation.

**7.** In arguing against the Plan Note, Freddie Mac also relies on § 1129(b)(2)(A)(I)(i), which provides as follows:

With respect to a class of secured claims, the plan provides—
. (i)(I) that the holders of such claims retain the liens securing such claims, whether the property subject to such liens is retained by the debtor or transferred to another entity, to the extent of the allowed amount of such claims
. . .

## B. Other Objections

█ Freddie Mac opposes the Plan Note on other grounds, as well. First, Freddie Mac claims that the Note's face amount should be $1,782,114.00, a figure which represents its total allowed claim. The provisions of the confirmed Plan, however, state that the principal amount of the Plan Note is to be $1,350,000.00, a figure representing the present value of the property. Since the Plan Note complies with the terms of the Plan in this respect, the Courts finds Freddie Mac's objection to be without merit.

█ Another issue in dispute is whether the Plan Note modifies the Debtor's other obligations under the original note which the Plan left unchanged. As previously noted, the Plan provided that "[a]ll other terms of the Loan Documents not contradicted herein shall remain in full force and effect and are not changed by the Plan." *See* Plan at ¶ 7.1.6 (June 28, 1991). Freddie Mac argues that the Plan Note should contain all terms of the original note not expressly changed by the Plan. Specifically, the original note provided for a charge of 1% of the outstanding principal balance to be assessed against the Debtor should the Debtor prepay the note. This language is missing from the Plan Note provision discussing the Debtor's obligations in the event of a prepayment. Therefore, the Court finds the Plan Note to be lacking in this respect.

█ Moreover, Freddie Mac claims the Plan Note wrongly fails to provide for any recovery beyond its face amount upon default. The default provision of the Plan Note states that upon default, "the entire principal amount outstanding hereunder and accrued interest thereon shall at once become due and payable." *See* Debtor's Motion, Exhibit A (Dec. 29, 1993). The Court finds this language inadequate. Should the Debtor default on the Plan Note, the amount immediately due and payable should equal Freddie Mac's allowed claim of $1,782,114.00, less any interest and principal payments received up until that time.

█ Finally, Freddie Mac requests that a "due on sale" clause be added to the Plan Note. Such a provision would require the Debtor to prepay Freddie Mac's outstanding claim should it sell the property prior to the Plan Note's maturity.[8] In bringing its Motion, the Debtor claims it is attempting to avoid a future dispute over the prepayment provision in the event it sells the property before the Plan Note's maturity. *See* Debtor's Brief at 3 (Dec. 29, 1993). As such, it appears that the Debtor intends the prepayment provision in the Plan Note to act as a due on sale clause. The Debtor, however, should reword the Plan Note so as to expressly reflect this intent. *See, e.g.*, EPSTEIN at 53 (courts should infer requirement of due on sale clause in § 1111(b)(2) situations). Therefore, the Court concludes that the Debtor needs to make additional changes in the Plan Note before Freddie Mac can be required to accept it.

## Conclusion

In conclusion, the Court finds that the interest payments the Debtor makes on the Plan Note serve to reduce Freddie Mac's allowed claim of $1,782,114.00. Freddie Mac maintains a continuing lien only to the extent of its outstanding claim. Nevertheless, the Plan Note is deficient in that it does not contain all the terms of the Debtor's original obligation not expressly modified by the Plan. In addition, the default provision of the Plan Note does not make immediately

---

11 U.S.C. § 1129(b)(2)(A)(I)(i). Freddie Mac also cites to various Supreme Court cases discussing lien stripping in the context of chapters 7 and 13. These arguments go to the issue of the extent Freddie Mac has a continuing lien on the property securing its claim. They do not address the issue, however, as to whether or not present value payments, including interest, may satisfy this lien. Freddie Mac may have a continuing lien against the property, but only to secure the *outstanding* balance of its allowed claim. *See* 5 COLLIER ON BANKRUPTCY ¶ 1111.02, 1111–36 (15th ed. 1993). Moreover, such an argument was rendered moot by the confirmation of the Plan.

8. Such a clause would prevent the Debtor from selling the property to a third party, subject to Freddie Mac's claim. Instead, the Debtor would be forced to satisfy Freddie Mac's claim from the proceeds of the sale.

due and payable the outstanding balance of Freddie Mac's allowed claim should the Debtor default. Also, the terms of the prepayment provisions should reflect the Debtor's intent that it will operate as a due on sale clause. Accordingly, the Debtor's Motion to Require Lender to Accept Plan Note is hereby **DENIED.** The Plan Note could be made acceptable, however, if the Debtor makes the minor changes referred to above.

**IT IS SO ORDERED.**