In re WATER GAP VILLAGE, a limited partnership, Debtor.

Bankruptcy No. 83–01021.

United States Bankruptcy Court, D. New Jersey.

Jan. 5, 1989.

Samuel A. Alito, Jr., U.S. Atty. by Susan Cassell, Newark, N.J., Asst. U.S. Atty. and Nelson Chan, Philadelphia, Pa., Counsel for HUD for Dept. of Housing & Urban Development.

Hannoch, Weisman, Stern, Besser, Berkowitz & Kinney, Roseland, N.J. by John Sillman, for Class 4 creditors.

Sills, Beck, Cummis, Zuckerman, Radin, Tischman & Epstein by Lee Alan Adlerstein, Newark, N.J. and Ravin, Sarasohn, Cook, Baumgarten, Fisch & Baime by Robert Baime, Roseland, N.J., Substituted Counsel for debtor.

## OPINION

VINCENT J. COMMISA, Chief Judge.

This matter comes before the Court on an Order to Show Cause why an Order effectuating the Plan of Reorganization and Approving a Statement for Distribution Pursuant to the Confirmed Plan should not be entered. The Order to Show Cause was brought on behalf of the debtor-in-possession, Water Gap Village, a limited partnership of the State of New Jersey, based on 11 U.S.C. § 1142, and Bankruptcy Rule 3020(d). This is a core proceeding under 28 U.S.C. § 157(b)(2)(L), which grants jurisdiction to the Bankruptcy Court over matters relating to confirmations of plans. This Opinion shall constitute the Court's Findings of Fact and Conclusions of Law pursuant to Bankruptcy Rule 7052.

Although the factual background of this matter has already been set forth in a reported Opinion, *In re Water Gap Village, a limited Partnership of the State of New Jersey, Debtor,* 59 B.R. 23 (Bkrtcy.D. N.J.1985), the Court, for clarification, will set forth the relevant facts and procedural history below.

Water Gap Village ("Water Gap" or "Debtor"), is a Limited Partnership of the State of New Jersey, which is involved in the operation and ownership of 100 residential townhouse units. The units, which were constructed by the Debtor in 1977, are situated on approximately 9.25 acres of land in Monroe County, Pennsylvania.

In relation to this project, Water Gap entered into a mortgage with Chemical Bank, dated August 15, 1977, in the amount of $2,415,000, to be used for the construction of the townhouse complex. The corresponding note provided for a 9% interest rate and was secured by all realty, equipment and fixtures. The note was endorsed and insured by the United States Department of Housing and Urban Development ("HUD"), pursuant to the National Housing Act (12 U.S.C. § 1701, *et seq.*). In 1979, Water Gap failed to tender payments under the terms of the mortgage. As a result, and in accordance with the terms of

its guarantee, Chemical Bank assigned the mortgage to HUD. HUD now holds the mortgage, mortgage note and security agreement.

Subsequently, on February 16, 1983, Water Gap filed a petition for reorganization under Chapter 11 of the Bankruptcy Code. On December 3, 1985, this Court confirmed the Debtor's Plan of Reorganization over HUD's strenuous objections that *inter alia,* the Plan provided HUD with less than it would receive under a liquidation and that, as a regulatory body, it was not subject to the "cram down" provisions of Section 1129. *See In re Water Gap Village, supra.*

For reference purposes, the Sections of the Plan pertinent to this Opinion are set forth herein. Article II of the Plan, which designates classes of claims and interest, provides as follows:

2.1 CLASS ONE: Administrative claims, which shall consist of all administrative expenses entitled to priority allowed pursuant to Code § 503 which are due and payable on or before the Effective Date of the Plan.

2.2 CLASS TWO: Priority claims shall consist of all allowed unsecured claims entitled to priority pursuant to Code §§ 507(a)(3) or 507(a)(6) which are unpaid as of the Effective Date of the Plan.

2.3 CLASS THREE: The United States Department of Housing & Urban Development ("HUD") as a secured creditor, to the extent it holds a security interest in a mortgage on certain property of the Debtor. To the extent that it does not hold a security interest, HUD shall have a general unsecured claim.

2.4 CLASS FOUR: Comfort Heating & Cooling Corp., Leroy E. Shoesmith & Son, Inc. and The Kenalty Corp., as unsecured creditors, to the extent of their allowed claims for work completed and services performed in conjunction with construction of, and improvements to Water Gap Village.

2.5 CLASS FIVE: All other general unsecured claims.

2.6 CLASS SIX: All claims of limited partners.

2.7 CLASS SEVEN: DHC Realty Corp., to the extent it is a general partner.

2.8 CLASS EIGHT: Arthur J. Sabatino, to the extent of his allowed claims as a co-general partner, and otherwise.

Additionally, the Statement of Distribution provides that the following payments be made:

1. As to Class I administrative claims for professional services, payment into an escrow account controlled by the disbursing agent in a sum equalling $100,-000;

2. As to administrative claims of the United States Department of Housing and Urban Development (HUD), payment of $55,063 for reimbursement of real estate taxes paid by HUD on property of the debtor and $73,604 to cover any and all funds remaining due and owing to HUD under this Court's September 15, 1983 order (the debtor to be reimbursed by HUD to the extent any of such amounts is found to have previously been paid by or on behalf of the debtor);

3. As to Class II priority claims, payment into an escrow account controlled by the disbursing agent of a sum equalling $500;

4. As to Class III creditors, the United States Department of Housing and Urban Development as secured creditor, payment of the sum of $1,300,000;

5. As to Class IV creditors, The Kenalty Corp., Leroy E. Shoesmith & Son, Inc. and Comfort Heating & Cooling Corp., payment of a sum equalling $95,-000;

6. As to Class V unsecured creditors, payment to each such unsecured creditor of a sum equal to 10% of each claim, as follows:

| | PAYMENT |
|---|---|
| —B.R. Peters, Inc. | $      32.16 |
| —Velleff Pennsylvania | 18.49 |
| —Borough of Delaware Watergap | 1,269.46 |
| —Direct Carpet | 477.00 |
| —Farber Sherman | 300.00 |
| —Hammond | 159.14 |
| —L. Marki & Son | 147.00 |

| | PAYMENT |
|---|---|
| —Mesko Glass | $ 1.78 |
| —Metro Edison Co. | 154.73[1] |
| —Pocono Copy | 2.88 |
| —Pocono Record | 4.00 |
| —Pocono Refrigerator | 21.15 |
| —Schmidt's Service | 26.05 |
| —Sherwin–Williams | 25.36 |
| —Sills Beck Cummis Zuckerman Radin Tischman & Epstein (for pre-petition services) | 396.67 |
| —Spooner Michelle & Ford | 500.00 |
| —Steinhouer's Stationary | 7.09 |
| —Stock & Strock & Levan | 1,022.70 |
| —B.W. Credit Corp. | 73.78 |
| —Mike's Snow Plowing | 21.00 |
| —Safeguard Business | 12.18 |
| —United States Department of Housing & Urban Development as unsecured creditor | 166,283.57 |
| | $170,956.19[1] |

Further, Article IV of the Plan mandates that the debtor and HUD enter into a new mortgage with regard to the subject property, with monthly payments being made, in respect of HUD's secured claim in the amount of $1.3 million, for a 480 month period (*i.e.* 40 years), at an interest rate of 13%.

Prior to confirmation of the Plan, HUD instituted a lawsuit against the general partner of the debtor, DHC Realty Corp., and the principal of the general partner, Jack Pivnick. *United States of America v. DHC Realty Corp. and Jack Pivnick*, D.C. E.D.Pa. (Civil Action No. 84–5780). In the suit HUD alleged that these parties were in violation of the administrative agreement between HUD and the debtor, as a result of using funds for maintenance of the Water Gap property, which should have gone directly to HUD. Subsequently, during the pendency of this action, the Water Gap Village Confirmation Order was entered and HUD took an appeal from the order. As part of the settlement of this action, in which HUD received $500,000, HUD's appeal of the Confirmation Order was withdrawn.

Thereafter, the Debtor's general partner and its principals sought to raise the $500,-000 which it owed to HUD as a result of the settlement. The Debtor's property, being its sole asset, was looked to as a means of raising these funds, a fact known to representatives of HUD. Initially, the Debtor attempted to obtain a refinancing of its property. These attempts were unsuccessful because the periodic payments required under the Plan prevented the Debtor from giving clear title to the property.

The debtor and its principals then sought to sell the property so that payment in full could be made under the Plan, thus obviating the need for periodic payments. The Debtor's intent to sell the property, and the motivation for the sale, were communicated to the United States Attorney's Office in Philadelphia as HUD's representative. On February 9, 1987, the Debtor entered into a contract for the sale of Water Gap Village Apartments to Gap Associates, a New Jersey limited partnership.

The contract for sale provides for the purchaser to pay the Debtor Three Million Two Hundred Twenty–Five Thousand Dollars ($3,225,000.00). Twenty–Five Thousand Dollars ($25,000.00) was paid upon execution of the contract with the balance to be paid at closing. The balance consists of Two Million Seven Hundred Seventy–Five Thousand Dollars ($2,775,000.00) and a promissory note in the amount of Four Hundred Twenty–Five Thousand Dollars ($425,000.00). The promissory note is secured by a second mortgage executed by the Buyer and an assignment of leases and rents executed by the Buyer.

At approximately the same time, and after extensive negotiations with the United States Attorney's Office in Philadelphia (as HUD's representative), the Debtor and HUD reached an agreement as to the precise dollar amounts to be paid to HUD

---

1. Metropolitan Edison Company filed an objection to the Order to Show Cause at issue in this Opinion, based on the dollar amount listed in the Debtor's Statement of Distribution. Pursuant to the Plan, Metropolitan Edison, as a Class V Unsecured Creditor, is entitled to 10% of its claim. The Proof of Claim filed by Metropolitan Edison is in the amount of $2,737.64. Thus, the Court notes that the Statement of Distribution should reflect a claim for $273.76, not a claim for $154.73 and is therefore in error. The debtor has consented to raise the amount due and owing to Metropolitan Edison to the correct amount.

under the Plan. Pursuant to this agreement, the debtor agreed to pay to HUD over $100,000 in settlement of HUD's claims for missed payments and real estate taxes.

Despite HUD's voluntary agreement to the terms of the settlement as set forth above, HUD objects to the Order to Show Cause on various grounds. HUD's principal objection is that the sale of the Debtor's property, (its sole asset) is tantamount to a liquidation, not a reorganization, and as such, constitutes a modification which requires that the Debtor submit a disclosure statement. Additionally, HUD contends that the Order Effectuating the Plan provides HUD with less than the liquidation value of its claim.

The Debtor responds to these contentions, and additionally, raises further issues. First, the Debtor maintains that its proposed sale is not a "modification" (as HUD asserts) under Section 1127(b), but rather an "implementation" under Section 1142. Thus, the Debtor contends that since the effectuation Order is neither a modification nor a new plan, no new disclosure statement is required.

Additionally, the Debtor claims that HUD's contention that it is not receiving the full liquidation value of its claim is out of time, as HUD did not choose to make a Section 1111(b)(2) election prior to confirmation, which would have allowed HUD to be secured for the full amount of its debt.

Finally, the Debtor requests that, pursuant to Section 1142(b), this Court render administrative assistance, as required to effectuate the confirmed plan. The Court now turns to address the contentions of both parties.

First, the Court considers HUD's allegation that the proposed sale of the Debtor's property is a modification of the Debtor's confirmed Plan. As support for its allegation, HUD contends that "[t]he sale of the sole asset and business is a liquidation of

the Debtor ... [and that] [t]his change from a reorganization to a liquidation is a major modification of the Plan ..." [2] HUD cites no case law or statutory support for its contention, although it does cite 11 U.S.C. Secs. 1123(b)(4) and 1127(b), which deal with, respectively, requirements of a Plan and modifications to a Plan. However, neither of these sections state that a proposed sale to accelerate payments pursuant to a Plan constitutes a "modification" of such Plan.

As a factual matter, the confirmed Plan does not proscribe the sale of the Debtor's property, nor does it prohibit accelerated payment to post-petition creditors.[3] Perhaps more importantly, as a matter of law, confirmation by this Court vested full ownership of its property in the Debtor which necessarily includes the right to alienation of such property, subject only to the payment provisions required by the Plan. 11 U.S.C. § 1141(b). This section provides:

"Except as otherwise provided in the plan or the order confirming the plan, *the confirmation of a plan vests all of the property of the estate in the debtor.*" (Emphasis added).

■ In addition, case law amply supports the proposition that, post-confirmation, a Debtor is only bound by its payment obligations under the Plan. In *In re Ernst,* 45 B.R. 700, 702 (Bankr.Minn.1985), the court stated: "The effect of confirmation is to discharge the entire preconfirmation debt, replacing it with a new indebtedness as provided in a confirmed plan. The plan is essentially a new and binding contract, sanctioned by the Court between a debtor and his preconfirmation creditors."

■ In *In the Matter of Wood,* 12 B.C.D. 1197 (Bankr.Wis.1985), post-confirmation creditors claimed that a sale of the debtor's assets was a violation of Sec. 363. The court, in rejecting this argument, noted that as confirmation of the Plan vested all property rights in the debtor, the debtor

**2.** *See* HUD's Memorandum in Opposition to Debtor's Proposed Order Effectuating Plan, at p. 4.

**3.** In addition, the Court notes that a mortgagor's right to redeem his mortgage is incident to every mortgage, and the mortgage held by HUD is no exception. *Peugh v. Davis,* 96 U.S. 332, 24 L.Ed. 775 (1878).

had the right to transfer his property subject only to provisions of the Plan. Further, the *Wood* Court placed the burden of negotiating pre-confirmation sale restrictions on the creditors, and rejected their argument that since the Plan was to be funded by proceeds obtained through dairy operations, it was an implicit requirement of the Plan that the debtor continue such operations. Similarly, in the instant case, HUD would have the Court find an implicit provision in the Debtor's Plan that it continue the operation and ownership of its townhouse units. In light of both the statutory and case law mandates, the Court is not persuaded by this argument. The Court finds that the proposed sale of the Debtor's assets is *not* a modification of its Plan, but rather a method of accelerating and effectuating the Plan payment provisions as set forth, *supra*, and thus, the Debtor is not required to submit a new disclosure statement.

Next, the Court turns to HUD's contention that the proposed sale provides it with less than the liquidation value of its claim, which it alleges is approximately $3,468,-000.00. The Court is aware. and surely HUD as a governmental entity was also aware, that if HUD objected to its three million dollar pre-petition mortgage being "crammed down" to a $1.3 million post-petition mortgage, it could have elected under 11 U.S.C. Sec. 1111(b)(2), to be secured to the full amount of its pre-petition lien. It is clear that HUD must have known that residential property and real estate would appreciate, and it is just such a situation which the drafters of Sec. 1111(b)(2) contemplated. As noted in the Congressional Record, September 28, 1978, at H.11104, reprinted in App.3 Collier on Bankruptcy IX–227, 118, 119 (15th Ed.1986):

> The advantage to the electing creditors is that they have a lien securing the full amount of the allowed claim so that if the value of the collateral increases after the case is closed, the deferred payments will be secured claims.

Similarly, as noted by the Court in *Southern Missouri Towing Service, Inc.*, 35 B.R. 313 (Bankr.S.D.Mo.1983), "[t]he real value of a Section 1111(b) election is where the collateral appreciates."

This Court will not engage in speculation with regard to why HUD did not choose to make a Section 1111(b) election. However, neither will this Court allow this failure to impede the swift and efficacious payment to creditors that will result under the effectuation of the Debtor's confirmed Plan. Accordingly, this Court finds that HUD's contentions regarding the inadequacy of its claims under the Plan are inappropriate at this juncture, inasmuch as the Plan has already been confirmed by this Court. Additionally, the Court notes that HUD withdrew its appeal of the Confirmation Order pursuant to the terms of its settlement with the Debtor's general partner, and that HUD did not move to revoke confirmation pursuant to Section 1144.

In conclusion, the Court finds that since full ownership of the property vested in the Debtor at confirmation, and since there are no express Plan provisions prohibiting sale of the property, the proposed sale is *not* a modification, but rather an effectuation of the Plan. Further, the Court finds that the time has passed for HUD to assert its right to the full liquidation value of its claim, particularly in light of its failure to make a Section 1111(b) election and its acquiescence in the approximately $128,000 settlement which it reached with the Debtor.

Accordingly, since effectuation of the confirmed Plan will benefit all creditors, the Court will grant the Debtor's motion for an Order Effectuating the Plan of Reorganization.

Submit the appropriate Order within ten (10) days of the date hereof.