**In re DAEWOO MOTOR AMERICA, INC., Reorganized Debtor.**

**No. CV 11–4653 SVW.**

United States District Court, C.D. California.

Sept. 8, 2011.

Joshua E. Anderson, Michelle Beth Goodman, Sally S. Neely, Peter I. Ostroff, Sidley Austin LLP, Los Angeles, CA, for Appellee.

Carol Chow, Theodore B. Stolman, Stutman Treister & Glatt PC, Los Angeles, CA, Barry R. Levy, Stan Thomas Todd, Horvitz & Levy, Encino, CA, for Appellant.

ORDER AFFIRMING BANKRUPTCY COURT'S ORDER DENYING APPELLANT'S MOTION TO EXTEND TERM OF CREDITOR TRUST [1, 2]

STEPHEN V. WILSON, District Judge.

## I. INTRODUCTION AND PROCEEDINGS BELOW

Appellant Daewoo Motor America, Inc. ("DMA" or "Appellant") appeals the bankruptcy court's order denying as untimely its motion to extend the term of the Creditor Trust in connection with its Chapter 11 plan of reorganization.

On May 16, 2002, Appellant filed a voluntary petition for bankruptcy under Chapter 11 the United States Code. (*See* 3 ER 393). On October 8, 2003, the bankruptcy court confirmed Appellant's Sixth Amended Chapter 11 Plan of Reorganization (the "Plan"), with an effective date of October 16, 2003. (1 ER 18; 3 ER 402). The Plan was implemented, in part, through the creation of a Creditor Trust. (1 ER 447). Pursuant to the Plan, the "primary role" of the Creditor Trust and the Trustee was "to distribute the assets of the Creditor Trust to the holders of Allowed Claims in accordance with the terms of the Plan and the Creditor Trust Agreement." (3 ER 449).

Appellant was a wholly-owned subsidiary of Appellee Daewoo Motor Company, Ltd. ("Appellee"). In connection with Appellant's bankruptcy proceedings, Appellee filed a Proof of Claim for $158,956,488.79, which led to an adversary proceeding entitled *Daewoo Motor Am., Inc. v. Daewoo Motor Co., Ltd.,* No. 2:03–2155–BB (the "Adversary Proceeding"). In this Adversary Proceeding, the bankruptcy court ultimately entered judgment for Appellee against Appellant in the amount of approximately $118 million, and concluded that Appellee had an allowed general unsecured claim in Appellant's bankruptcy case in that amount. As a result of this judgement, Appellee is Appellant's largest unsecured creditor. (*See* ER 167–68). Appellant appealed the bankruptcy court's judgment in the Adversary Proceeding to this Court. *See Daewoo Motor America, Inc. v. Daewoo Motor Co., Ltd.,* No. 2:10–CV–5445 (SVW). The judgement in the Adversary Proceeding is not, however, the subject of this appeal.

According to the Plan, "[t]he Creditor Trust shall not have a term greater than five years from its date of creation, unless extended from time to time pursuant to the terms of the Creditor Trust Agreement." (3 ER 450). The Creditor Trust Agreement provides, in turn, that "the

term of the Trust may be extended for a finite term beyond the fifth (5th) anniversary of the Effective Date if ... *not later than six (6) months prior to the beginning of the extended term of the Trust,* the Court approves such extension upon a finding that such extension is necessary to the liquidating purpose of the Trust[.]" (4 ER 604) (emphasis added).

Until the Creditor Trust terminates, the cash in the Trust can be used to pay Appellant's bankruptcy-related litigation expenses, (*see* 3 ER 449–50), including, in particular, the appeal of the bankruptcy court's judgment in favor of Appellee in the Adversary Proceeding. Appellant contends that its creditors, who number in the thousands, "depend on the trust" to fund the appeal of the Adversary Proceeding, which "has the potential to recover tens of millions of dollars for the beneficiaries." (Opening Br., at 2). Once the Creditor Trust terminates, however, the remaining funds (minus the Trust's expenses) are to be distributed "to the holders of Allowed Claims in accordance with the terms of the Plan and the Creditor Trust Agreement." (*Id.*) As of March 31, 2011, the Creditor Trust had a total of approximately $1.8 million in cash on hand. (3 ER 549).

The Creditor Trust was initially scheduled to end on October 16, 2008, five years from its original effective date. (1 SER 12). On March 2, 2007, Appellant moved to extend the term of the Creditor Trust to June 30, 2011. (1 SER 1). On May 4, 2007, the bankruptcy court granted the motion, extending the term of the Creditor Trust to June 30, 2011. (4 ER 617).

On April 8, 2011, Appellant filed a subsequent motion to extend the term of the Creditor Trust. In its motion, Appellant sought both to extend the term of the Creditor Trust by three years and concurrently to modify the Plan such that Appellant's request for the extension would be timely under the Plan's terms. Specifically, Appellant requested that the bankruptcy court: (1) "extend the current term of the Creditor Trust by an additional three (3) years, from June 30, 2011 to June 30, 2014;" and (2) "approve the following modification to paragraph 2.8(ii)(A) of the DMA Creditor Trust Agreement ...: [The term of the Creditor Trust may be extended if] '(A) ~~not later than~~ *within* six (6) months ~~prior to~~ *of* the beginning of ~~the~~ *each* extended term of the Trust, the Court approves such extension....' " (4 ER 567).

The Trustee joined the motion. Appellee opposed it. At a May 17, 2011 hearing, the bankruptcy court denied the motion. (2 ER 134 *et seq.*). The bankruptcy court concluded that the motion to extend the term of the Creditor Trust was untimely under the unambiguous provisions of the Creditor Agreement, which were expressly incorporated into the Plan and required that the extension be approved "not later than six (6) months prior to the beginning of the extended term of the Trust." The bankruptcy court held that the modification requested by Appellant, under which the request would have been timely, was barred by 11 U.S.C. § 1127(b), because the Plan had been substantially consummated. The bankruptcy court further held that the modification requested by Appellant was not warranted based on an alleged "mutual mistake" by the drafters of the Plan. On May 17, 2011, the bankruptcy court entered an order denying Appellant's motion for the reasons set forth on the record at the hearing. (1 ER 3–4).

Appellant timely filed its notice of appeal to this Court on May 26, 2011.

## II. STANDARD OF REVIEW

This Court "reviews a bankruptcy court's conclusions of law *de novo* and its findings of fact under the clearly erroneous standard." *Dolven v. Bartleson (In*

*re Bartleson)*, 253 B.R. 75, 78–79 (9th Cir. BAP 2000) (quoting *Walsh v. Northwestern Nat'l Ins. Co. (In re Ferrante)*, 51 F.3d 1473, 1475 (9th Cir.1995)). "[A] chapter 11 plan should generally be interpreted as if it were a contract." *Id.* (quoting *C.F. Brookside, Ltd. v. Skyview Memorial Lawn Cemetery (In re Affordable Housing Development Corp.)*, 175 B.R. 324, 329 (9th Cir. BAP 1994), citing *Hillis Motors, Inc. v. Hawaii Automobile Dealers' Ass'n*, 997 F.2d 581, 588 (9th Cir.1993)). "The interpretation of a contract is a mixed question of law and fact. When the ... court's decision is based on an analysis of the contractual language and an application of the principles of contract interpretation, that decision is a matter of law and reviewable *de novo*. When the inquiry focuses on extrinsic evidence of related facts, however, the trial court's conclusions will not be reversed unless they are clearly erroneous." *Miller v. Safeco Title Ins. Co.*, 758 F.2d 364, 367 (9th Cir.1985).

■■ "[S]tate law ... governs ... interpretation of [the] plan." *Hillis Motors, Inc. v. Haw. Auto. Dealers' Ass'n*, 997 F.2d 581, 588 (9th Cir.1993). Here, both the Plan and the Creditor Trust Agreement specify that they are governed by California law. (*See* 3 ER 483–84 (Plan); 4 ER 611 (Creditor Trust Agreement)). Under California law, the determination of whether a mutual mistake occurred is a question of law only where "the extrinsic evidence is not in conflict[.]" *Hess v. Ford Motor Co.*, 27 Cal.4th 516, 527, 117 Cal. Rptr.2d 220, 41 P.3d 46 (2002). Otherwise, it is a question of fact. *See id.*

## III. DISCUSSION

### A. Purported Inconsistency in the Plan

■ Appellant contends that the Plan incorporates the requirements of Internal Revenue Service Revenue Procedure 94–45. One such requirement is that "[t]he trust instrument must require that each extension [of the term of the Creditor Trust] be approved by the court *within 6 months* of the beginning of the extended term." Rev. Proc. 94–45 § 3.06 (emphasis added). Section 2.8 of the Creditor Trust Agreement, however, provides that the trust can be extended if, "*not later than six (6) months prior to* the beginning of the extended term of the Trust, the Court approves such extension...." (4 ER 604) (emphasis added). Because the Creditor Trust Agreement is in "conflict" with the Plan, Appellant contends that the Plan provisions must prevail. (See 3 ER 419, Plan § 1(C) ("In the event of a conflict between the terms of any of the documents contained in the Plan Documents Supplement [including the Creditor Trust Agreement] and the Plan, the terms of the Plan shall govern...."); 4 ER 603 (Creditor Trust Agreement § 1.2.d) ("Whenever there is an inconsistency between this Agreement and the Plan, the Plan shall control....")).

■ Appellant misreads the applicable Plan documents. The Plan does not incorporate the requirements of Revenue Procedure 94–45. To the contrary, Revenue Procedure 94–45 is referenced only once in the entire Plan, in a provision that is unrelated to the disputed provision. Specifically, the Plan provides:

> Pursuant to ... Revenue Procedure 94–45 and any requirement of federal income tax law, the Estate will treat the transfer of the Creditor Trust Assets for federal income tax purposes as a deemed transfer of such assets to the creditors who are beneficiaries of the Creditor Trust followed by a deemed transfer of such assets by creditors to the Creditor Trust in exchange for beneficial interests therein.

(3 ER 450). This single reference to Revenue Procedure 94–45 is insufficient to incorporate *all* of the requirements of Revenue Procedure 94–45 (of which there are twelve) into the Plan. "For the terms of another document to be incorporated into the document executed by the parties the reference must be clear and unequivocal, the reference must be called to the attention of the other party and he must consent thereto, and the terms of the incorporated document must be known or easily available to the contracting parties." *Shaw v. Regents of University of California*, 58 Cal.App.4th 44, 54, 67 Cal.Rptr.2d 850 (Cal.App.1997) (citation and quotation marks omitted).

In contrast, the Plan expressly and unambiguously incorporates the disputed provision of the Creditor Trust Agreement. "The Creditor Trust shall not have a term greater than five years from its date of creation, unless extended from time to time pursuant to the terms of the Creditor Trust Agreement." (ER 450); *see also* 3 ER 419–20 ("all documents contained in the Plan Documents Supplement [including the Creditor Trust Agreement] are incorporated into and are a part of the Plan as if set forth in full herein.").

Accordingly, there is no conflict in the relevant Plan provisions. Instead, the Plan (through its express incorporation of the Creditor Trust Agreement) unambiguously provides that the Creditor Trust can be extended only if, *"not later than six (6) months prior to the beginning of the extended term* of the Trust, the Court approves such extension...." (4 ER 604). The bankruptcy court correctly concluded that Debtor's request for an extension, which was made approximately three months prior to the beginning of the extended term, was untimely.

## B. Modification vs. Interpretation

■ Appellant further contends that the bankruptcy court erred in failing to reform the disputed provision to conform with Revenue Procedure 94–45. 11 U.S.C. § 1127(b) provides: "The proponent of a plan or the reorganized debtor may *modify* such plan at any time after confirmation of such plan and *before substantial consummation of such plan...."* (emphases added). Accordingly, "pursuant to 11 U.S.C. § 1127(b), a plan can only be modified *before* it is substantially consummated." *In re Stevenson*, 148 B.R. 592, 595 (D.Idaho 1992). Here, the parties do not dispute that the Plan was substantially consummated as of the filing of Appellant's motion. Thus, a critical question with respect to this appeal is whether the change requested by Appellant constitutes a "modification" of the Plan (which is prohibited under Section 1127(b))[1] or merely an

---

1. In its reply brief, Appellant argues for the first time that a modification of a reorganization plan should be allowed when a "compelling reason" exists. (Reply, at 16–17). None of the cases cited by Appellant, however, permit the modification of a *substantially consummated* plan. As discussed below, such modifications have been permitted only in a narrow set of circumstances that are not present here. Moreover, Appellant expressly conceded to the bankruptcy court that it *"agrees* the Plan has been substantially consummated and cannot be modified." (3 ER 370) (emphasis in original).

Appellant also argues for the first time in its reply brief that the modification of "plan-related documents" should *not* be treated the same as modifying "core aspects" of the plan. (Reply, at 17–18). As Appellant conceded in its Opening Brief, however, the Creditor Trust Agreement was expressly incorporated into, and is part of, the Plan. (Opening Br., at 21). Moreover, the sole case cited by Appellant undermines its own argument: "The question remains whether a change that would contravene section 1127(b) if made in the provisions of a plan can be accomplished by modifying the provisions of a plan-related

"interpretation" or "clarification" of the Plan (which is permissible under Section 1127(b)).

▆▆▆▆ Section 1127 does not define "modification," nor does the corresponding definitional section of Chapter 11. *See* 11 U.S.C. §§ 1101, 1127. Courts consistently have held, however, that "a bankruptcy court may clarify a plan where it is silent or ambiguous" and "can also use this authority to 'interpret' plan provisions to further equitable concerns." *Beal Bank, S.S.B. v. Jack's Marine*, 201 B.R. 376, 380 (E.D.Pa.1996). Section 1127(b), however, prohibits material changes to the express provisions of a plan after substantial consummation. *See Enterprise Fin. Group v. Curtis Mathes Corp.*, 197 B.R. 40, 45 (E.D.Tex.1996) ("Even if the proposed change does more accurately reflect the intent of the Plan, the proposed change modifies a material term of the Plan.... The Plan is not silent on this issue. The language of the Plan is clear and unambiguous.... The court concludes that the proposed amendment to the Plan was a [prohibited] modification.").

▆▆▆▆ Here, the Plan is neither silent nor ambiguous with respect to the deadline for extending the term of the Creditor Trust. The Plan expressly provides that "the term of the Trust may be extended for a finite term beyond the fifth (5th)

anniversary of the Effective Date if ... *not later than six (6) months prior to the beginning of the extended term* of the Trust, the Court approves such extension...." (4 ER 604) (emphasis added). Appellant seeks to "reform" this provision of the Plan to require just the opposite; *i.e.*, that any extension of the term of the Trust be approved *within* six (6) months of the extended term of the Trust. This is precisely the type of modification that is prohibited by Section 1127(b).

None of the authorities cited by Appellant support a finding that the requested change—which is directly contrary to the express provisions of the Plan—constitutes a mere "interpretation" and not a "modification" of the Plan. To the contrary, these cases uniformly hold that a "clarification"/"interpretation" is appropriate only where the requested change does not contradict the express provisions of the Plan. See *Beal Bank*, 201 B.R. at 380 (allowing clarification that "did not alter any provision of the Plan. Instead, the Court clarified the Plan on a matter on which it was silent."); *In re Airadigm Commn's, Inc.*, 547 F.3d 763, 770 (7th Cir.2008) (allowing award of interest under confirmed plan where nothing in the plan specifically precluded a retrospective award of interest, and the court concluded that such interest was implied in the plan's provisions); *In re*

---

document. The answer must be no. The rights of creditors, bargained for during the negotiations that preceded the presentation and confirmation of the Plan cannot depend on whether those rights were spelled out in a document labeled 'plan' or in an attached document labeled 'exhibit' or 'annex.'" *In re Joint Eastern & Southern Dist. Asbestos Litig.*, 982 F.2d 721, 748 (2d Cir.1992); *accord* 7 *Collier on Bankruptcy* ¶ 1127.03 (2011) ("A plan proponent or debtor cannot circumvent section 1127(b) and change the plan simply by calling its request a motion to modify the confirmation order, or to modify a plan-related document, or any application that none-

theless affects rights under the plan...."). As discussed below, the bankruptcy court correctly concluded that the requested modification to the Plan was material and, because the Plan had been substantially consummated, was precluded by 11 U.S.C. § 1127(b).

Accordingly, these arguments fail both on the merits and based on Appellant's failure to raise them in its opening brief. *See Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir.2007) ("The district court need not consider arguments raised for the first time in a reply brief.") (citing *Koerner v. Grigas*, 328 F.3d 1039, 1048 (9th Cir.2003)).

*Terex Corp.,* 984 F.2d 170 (6th Cir.1993) (same); *In re Johns–Manville Corp.,* 920 F.2d 121, 128 (2d Cir.1990) (allowing suspension of certain facility operations where "the Plan expressly grants the ... Trustees discretion to suspend operation of the ... Facility"); *United States for IRS v. APT Indus.,* 128 B.R. 145, 147 (W.D.N.C. 1991) (concluding "the Order did not change any material terms of the plan, but instead clarified the plan where previously it had been silent. The Court does not believe such an Order amounts to a modification."); *In re Mirant Corp.,* 348 B.R. 725, 737 (Bankr.N.D.Tex.2006) (where plan provided for debtor entering into settlements, "[t]he court therefore concludes that the Settlement may be approved without contradiction to the Plan."); *In re Water Gap Village,* 99 B.R. 226, 229 (Bankr.D.N.J.1989) (concluding proposed sale was not a "modification" where "the confirmed Plan does not proscribe the sale of the Debtor's property, nor does it prohibit accelerated payment to post-petition creditors").

Moreover, the bankruptcy court correctly concluded that the proposed change to the Plan is a *material change* and not merely "ministerial." The term and termination of the Creditor Trust is significant. Once the Trust is terminated, the remaining funds (minus expenses) will be distributed to Appellant's unsecured creditors. Thus, the disputed provision directly impacts the timing of the disbursement of these funds, which totaled over $1.8 million as of March 31, 2011.

Accordingly, the bankruptcy court correctly concluded that the change requested by Appellant would constitute a "modification" after substantial consummation of the Plan, and is therefore barred by 11 U.S.C. § 1127(b).

## C. Mutual Mistake

Appellant appears to argue that so long as the requested change to the Plan constitutes a "reformation" of language that was the result of a "mutual mistake" in drafting the Plan, then the change cannot qualify as a prohibited "modification" under Section 1127(b), regardless of the significance of the change. The minimal case law addressing this issue does not support Appellant's argument. In *In re Logan Place Props., Ltd.,* the Trust argued that it could seek to amend a previously-approved Chapter 11 Plan of Reorganization under Federal Rule of Civil Procedure 60(b) (made applicable to adversary proceedings through Bankruptcy Rule 9024), which provides for relief from a final judgment or order based on, *inter alia,* "mistake, inadvertence, surprise, or excusable neglect." *In re Logan Place Props., Ltd.,* 327 B.R. 811, 812 (Bankr. S.D.Tex.2005). The court disagreed, holding "[a]s explained below, § 1127 provides the exclusive means by which to modify a plan, and § 1144 provides the exclusive means by which to vacate a plan. The Trust cannot satisfy either provision, and therefore cannot change the plan as it stands, regardless of whether mutual mistake [by the debtor and the trust in drafting the plan] existed." *In re Logan Place Props., Ltd.,* 327 B.R. 811, 812, 814 (Bankr. S.D.Tex.2005).

While the Ninth Circuit has not addressed this issue, the Court agrees with the analysis in *Logan.* Section 1127 is the exclusive means by which to modify a plan. Thus, regardless whether a proposed modification is based on a "mutual mistake," such modification must comply with Rule 1127(b). This conclusion not only comports with a plain-text reading of Section 1127(b) (and the case law interpreting this provision), it also furthers the important policy of finality underlying the Bankrupt-

cy Code. *See generally In re Keenan,* 1999 U.S. Dist. LEXIS 22168, *13–14 (S.D.Cal. Dec. 20, 1999) (recognizing "the important public policy favoring orderly reorganization and settlement of debtor estates by affording finality to the judgments of the bankruptcy court.") (quoting *In re Public Serv. Co. of New Hampshire,* 963 F.2d 469, 471–72 (1st Cir.1992)).

 Moreover, as discussed below, the bankruptcy court did not clearly err in finding that Appellant failed to meet its burden of demonstrating that a mutual mistake occurred. The Court affirms the bankruptcy court's order on this alternative basis as well.

### 1. Legal Standard For Mutual Mistake

Under California law, a written instrument is presumed to express the true intent of the parties. Reformation or revision on the ground of mutual mistake ... requires clear and convincing evidence of the alleged mistake. Clear and convincing evidence requires a finding of high probability ... requiring that the evidence be so clear as to leave no substantial doubt; sufficiently strong to command an unhesitating assent of every reasonable mind.

*Inamed Corp. v. Medmarc Cas. Ins. Co.,* 258 F.Supp.2d 1117, 1123 (C.D.Cal.2002) (internal citations and quotation marks omitted). "In determining whether a mutual mistake has occurred, a court may consider parol evidence. Such evidence is admissible to show mutual mistake even if the contracting parties intended the writing to be a complete statement of their agreement.... Extrinsic evidence is necessary because the court must divine the true intentions of the contracting parties and determine whether the written agreement accurately represents those intentions." *Hess,* 27 Cal.4th at 525, 117 Cal. Rptr.2d 220, 41 P.3d 46 (citations omitted).

As discussed below, the extrinsic evidence in this case includes representations by two attorneys that it was their intent to draft the Plan in conformance with Revenue Procedure 94–45. In light of other conflicting evidence, the bankruptcy court did not find these statements persuasive. (*See* 2 ER 159). Accordingly, the relevant extrinsic evidence is in conflict, and the determination of whether a mutual mistake occurred is a question of fact under California law. *See Hess,* 27 Cal.4th at 527, 117 Cal.Rptr.2d 220, 41 P.3d 46. Therefore, this Court reviews the bankruptcy court's determination for clear error. *See Miller v. Safeco Title Ins. Co.,* 758 F.2d at 367; *Ankeny v. Meyer (In re Ankeny),* 184 B.R. 64, 68 (9th Cir. BAP 1995) ("Where the interpretation of a contract involves review of extrinsic evidence, we review findings of fact for clear error while reviewing *de novo* the principles of law applied to those facts.").

### 2. Application

Here, Appellant argues that the obvious intent of the drafters of the Plan was to comply with the requirements of I.R.S. Revenue Procedure 94–45. Revenue Procedure 94–45 provides guidelines to assist taxpayers in determining the circumstances under which an organization will be classified as a liquidating trust for federal income tax purposes. In particular, it states: "A ruling generally will be issued that an entity is classified as a liquidating trust if the following conditions are met: [list of 12 conditions.]" Appellant notes that the language of the Plan tracks very closely with eleven of these twelve conditions, with the notable exception of Section 3.06, which provides that "[t]he trust instrument must require that each extension be approved by the court *within 6 months of the beginning of the extended term.*"

Rev. Proc. 94–45 § 3.06 (emphasis added). The relevant Plan language provides just the opposite: "the term of the Trust may be extended for a finite term beyond the fifth (5th) anniversary of the Effective Date if ... *not later than six (6) months prior to the beginning of the extended term* of the Trust, the Court approves such extension...." (4 ER 604). Appellant argues that this is clearly a mistake, and the drafters' intent was to mimic Revenue Procedure 94–45, observing: "Why would it not be intended? Who wants to pay unnecessary taxes?" (Reply Br. at 10).

As discussed above, however, Revenue Procedure 94–45 is referenced only once in the entire Plan, in a provision that is unrelated to the disputed deadline for extending the term of the Creditor Trust. (*See* 3 ER 450). Moreover, Revenue Procedure 94–45 is not a binding pronouncement of the applicable law.

> The operating rules published in this revenue procedure are intended solely to assist taxpayers and their representatives in preparing ruling requests. These operating rules do not define, as a matter of law, the circumstances under which an organization will be classified as a liquidating trust for federal income tax purposes. That determination can be made only after examination of all the facts and circumstances in connection with the operation and activities of the trust.... A ruling *generally* will be issued that an entity is classified as a liquidating trust if the following conditions are met...."

Rev. Proc. 94–45 §§ 2, 3 (emphasis added); *see also United States v. Toyota of Visalia,* 772 F.Supp. 481, 486 (E.D.Cal.1991) ("[A Revenue Procedure] does not have the force and effect of law and thus is not binding on the I.R.S."), *aff'd,* 988 F.2d 126 (9th Cir.1993). Indeed, it is unclear to the Court whether the Plan's failure to require notice of an extension of the term of the Creditor Trust *within* six months of the beginning of the extended term would, on its own, preclude the Creditor Trust from acquiring status as a "liquidating trust" as contemplated by Revenue Procedure 94–45.[2] There has been no such ruling by the I.R.S. Accordingly, while the Plan's inclusion of many of the requirements of Revenue Procedure 94–45 is sufficient to raise an inference that the drafters may have intended to comply with *all* of its requirements, it does not constitute "clear and convincing" evidence that the drafters made a mutual mistake in failing to do so. It is certainly possible that a creditor would want more than six months notice of Appellant's intent to extend the term of the Creditor Trust.

Moreover, this is not the first time that Appellant has attempted to extend the term of the Creditor Trust. The Creditor Trust was originally scheduled to end on October 16, 2008. On March 2, 2007, Appellant moved to extend the term of the Creditor Trust to June 30, 2011. On May 4, 2007—*seventeen months before the end of the term*—the bankruptcy court granted the motion, extending the term of the

---

**2.** In this appeal, Appellant argues that it is generally advantageous for a trust to be deemed a liquidating grantor trust, as contemplated by Revenue Procedure 94–45, for federal income tax purposes. (*See, e.g.,* Opening Br., at 18; Reply, at 2–3). Appellant does not, however, make any cohesive argument as to the significance of Revenue Procedure 94–45 in connection with the Creditor Trust at issue in this particular case. Appellant does

not, for example, point to any *specific* adverse tax consequences that will occur (or may occur) if the Creditor Trust Agreement is not reformed. The apparently speculative nature of any such tax consequences weakens Appellant's argument that the disputed provision of the Creditor Trust Agreement was the result of a mutual mistake, particularly under the "clear and convincing" evidentiary standard.

Creditor Trust to June 30, 2011. The one and only time that Appellant previously extended the term of the Creditor Trust, it complied with the terms of the Plan as written (requiring the court's approval *not later than* six months before the start of the extended term), not the allegedly "correct" version that Appellant now puts forth (requiring approval *within* six months of the start of the extended term). This counsels strongly against Appellant's "mutual mistake" argument. Further, Appellant fails to provide an adequate explanation as to why it not only made a "mistake" in the original drafting of the Plan, but further compounded this "mistake" by complying with the disputed provision when it first extended the term of the Creditor Trust in 2007. *See Appalachian Ins. Co. v. McDonnell Douglas Corp.*, 214 Cal.App.3d 1, 19, 21, 262 Cal.Rptr. 716 (Cal.App.1989) (noting that reformation is an "equitable remedy," and declining to reform a contract based on alleged mutual mistake where the party seeking relief failed to provide an explanation for the mistake); *cf. Shawmut Bank, N.A. v. Kress Assocs.*, 33 F.3d 1477, 1500 (9th Cir.1994) (accepting explanation that the mistaken clause was an "inadvertently retained leftover" from a previous agreement).

At the hearing before the bankruptcy court, the lead counsel for Appellant and counsel for the creditors committee, who "were the principal parties that negotiated the terms of the plan," both stated that it was their intent to comply with Revenue Procedure 94–45. (2 ER 144–45; 169).[3] While these statements might be more probative—even determinative—in a "typical" two-party contract case, the bankruptcy court concluded that they were less persuasive in the unique context of a bankruptcy reorganization plan. (*See* 2 ER 156–57). While the Plan may have been negotiated primarily by counsel for Appellant and the creditors committee, the Plan was voted on by each individual creditor prior to its confirmation. These creditors, on whose behalf the Plan was negotiated, were not present during the negotiations between Appellant and the creditors committee and were not privy to any purported desire on the part of the drafters to comply with Revenue Procedure 94–45.

Instead, the creditors voted on the terms of the Plan as written. As noted by the Bankruptcy Court, to the extent that any of these creditors were interested in the duration of the Creditor Trust, the unambiguous terms of the Plan on which they voted stated that the term of the trust could be extended only with notice of six months or more. There is no evidence that any of these creditors were "mistaken" with respect to the notice required for an extension.

The distinction made by the bankruptcy court between a "typical" two-party contract and a confirmed plan of reorganization plan appears to have merit. While the creditors committee was authorized to negotiate a proposed plan on the creditors' behalf, it did not have the authority to bind them to the Plan. "Although committees are charged with negotiating the plan on behalf of their constituencies, the committees are not authorized or empowered to

---

**3.** Appellee argues that such unsworn assertions from counsel are not evidence and should not be considered. (Opposition at 16–17) (citing *Tapco Products Co. v. Van Mark Products Corp.*, 446 F.2d 420 (6th Cir.1971) ("The unsworn, self-serving statements of counsel are not evidence.")). Appellee, however, failed to object to these statements at the hearing, and the bankruptcy court appeared to consider them. Accordingly, this Court has also considered these statements, while giving them appropriate weight under the circumstances.

bind their constituencies. They ... are not agents of and cannot bind the groups they represent." 7 *Collier on Bankruptcy* ¶ 1103. 05[1][d][i] (2011). "The plan will be submitted to creditors ... for voting and those holders may or may not follow the committee's recommendations." *Id.* Given that the creditors committee could not bind creditors to the Plan in the first instance, the assertion of counsel for the creditors committee that he made a "mistake" in drafting the Plan surely cannot bind the creditors to the "corrected" version of the Plan, absent some mechanism to ensure that the creditors do, in fact, agree with the "corrected" version. Here, of course, Debtor's largest unsecured creditor—namely, Appellee—argues vehemently against reformation.

Appellant cites no case directly addressing the bankruptcy court's ability to reform a confirmed (and substantially consummated) Chapter 11 plan of reorganization on the basis of an alleged "mutual mistake," over the objection of a creditor. Nor has the Court found any such case. Nevertheless, the Court need not address the apparently uncharted legal territory of whether, and to what extent, individual creditors must agree to the reformation of a confirmed plan of reorganization based on an alleged "mutual mistake" by the drafters of the Plan.[4] Based on Appellant's previous compliance with the disputed provision of the Plan (*i.e.,* when Appellant requested the first extension of the term of the Creditor Trust *nineteen months* prior to the beginning of the extended term), this Court cannot say that the bankruptcy court clearly erred in concluding there was no "mutual mistake" in the drafting of this provision.

**4.** As discussed above, any such reformation in this case would have been barred by 11

Accordingly, the bankruptcy court's finding that Appellant failed to demonstrate by clear and convincing evidence that there was a "mutual mistake" in the drafting of the Plan was not clearly erroneous. *Cf. Hess,* 27 Cal.4th at 527, 117 Cal.Rptr.2d 220, 41 P.3d 46 (finding mutual mistake where the extrinsic evidence was "uncontroverted").

## D. Appellee's Standing

■■■ Appellant contends that Appellee lacks prudential standing under the Ninth Circuit's "person aggrieved" test to defend the bankruptcy court's order on appeal and, therefore, Appellee's brief should not be considered, and Appellee should not be allowed to participate in oral argument. (Opening Br., at 26–29). Even assuming, *arguendo,* that the "person aggrieved" test may properly be applied to an *appellee* in a bankruptcy appeal (*but see* Opposition, at 24–27), this doctrine is inapplicable here.

This rule of appellate standing, the so-called "person aggrieved" test, derives from section 39c of the Bankruptcy Act of 1898, which permitted appeal by a "person aggrieved by an order of a referee." 11 U.S.C. § 67(c) (1976) (repealed 1978). It exists to fill the need for an explicit limitation on standing to appeal in bankruptcy proceedings. This need springs from the nature of bankruptcy litigation which almost always involves the interests of persons who are not formally parties to the litigation. In the course of administration of the bankruptcy estate disputes arise in which numerous persons are to some degree interested. Efficient judicial administration requires that appellate review be limited to those persons whose interests are directly affected.

U.S.C. § 1127(b) in any event.

.

*In re Fondiller,* 707 F.2d 441, 443 (9th Cir.1983). "We have not, however, invoked this doctrine in instances in which the appellant was the party that brought the motion at issue on appeal. Instead, we have invoked it when the appellant is a party other than the moving party." *Sherman v. SEC (In re Sherman),* 491 F.3d 948, 957 n. 8 (9th Cir.2007). Here, Appellee was the party that opposed the underlying motion before the bankruptcy court, and is the only party supporting the bankruptcy court's decision on appeal. Accordingly, the "judicial administration" concerns underlying the "person aggrieved" prudential standing requirement are not implicated, and Appellee need not establish prudential standing with respect to this appeal.

■ Appellee would satisfy the "person aggrieved" test in any event. The bankruptcy order on appeal effectively determined the date upon which the Creditor Trust will terminate, at which point the remaining proceeds of the trust will be paid out to Appellant's creditors. As the largest creditor of Appellant, Appellee undoubtedly was "directly affected" by this order.

## IV. CONCLUSION

For the foregoing reasons, the bankruptcy court's order denying Appellant's motion to extend the term of the Creditor Trust is AFFIRMED.